CITY OF ST. JOSEPH, Missouri,
Respondent,

v.

PREFERRED FAMILY HEALTHCARE,
INC., Appellant,

and

D.E., et al., Intervenor/Appellant.

No. WD 46943.

Missouri Court of Appeals,
Western District.

June 15, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 1993.

Application to Transfer Denied
Sept. 28, 1993.

Troy L. Daugherty, Kansas City, for appellant.

John D. Boeh, St. Joseph, for respondent.

Samara N. Klein, Kansas City, for intervenor/appellant.

Before FENNER, P.J., and SPINDEN and SMART, JJ.

FENNER, Presiding Judge.

Appellants, Preferred Family Healthcare, Inc. (Preferred Family), and D.E., et al., appeal the order of summary judgment entered by the trial court in favor of respondent, City of St. Joseph, Missouri (City) in the City's action for declaratory judgment and injunction.

Preferred Family is a not-for-profit organization which owns and operates a group home located at 2020 N. 18th Street, St. Joseph, Missouri. D.E., et al., are the residents of the group home in question.[1]

Preferred Family desired to be able to use the home in question for eight residents recovering from drug or alcohol abuse. In order for the home to accommodate eight residents, Preferred Family deemed it necessary to undertake some construction work on the home. Preferred Family sought a building permit from the City which was denied. Thereafter, the City filed its action for Declaratory Judgment and Permanent Injunction seeking to have appellants enjoined from using the property in question as a group home for recovering drug and alcohol abusers and further seeking declaration as to the validity of the City's zoning ordinances affecting Preferred Family's desire to use the home in the fashion it intended.

The trial court allowed the Missouri Protection and Advocacy Services (MoPAS) to intervene on behalf of itself and several of the group home residents. MoPAS is a federally funded, independent, not-for-profit agency which is mandated under federal law to advocate on behalf of disabled individuals in Missouri.

The City argued that Preferred Family was not allowed to maintain its group home in an R–1A single-family residential zoning district. The City filed a motion for summary judgment which was sustained by the trial court. In its order granting summary judgment, the trial court enjoined Preferred Family from putting more than five

---

1. Residents of the group home initially named in the suit were substituted with new residents as the population of the home changed.

unrelated persons in the group home because it was located in an R–1A single-family zoning district, but allowed for the group home to be used by five or less unrelated persons recovering from drug or alcohol abuse.[2]

In their first point on appeal, appellants argue that the trial court misinterpreted section 89.020.2, RSMo Supp.1992,[3] or applied section 89.020 in a manner that violates the Rehabilitation Act, 29 U.S.C. §§ 701–796i. Appellants argue first that group homes for individuals recovering from alcohol and drug abuse are allowed in all single-family zoning districts by virtue of section 89.020.2.

Section 89.020.2 provides, in pertinent part, as follows:

For the purpose of any zoning law, ordinance or code, the classification single family dwelling or single family residence shall include any home in which eight or fewer unrelated mentally or physically handicapped persons reside, and may include two additional persons acting as house parents or guardians who need not be related to each other or to any of the mentally or physically handicapped persons residing in the home.

Appellants argue that persons recovering from alcohol and drug abuse are "mentally or physically handicapped persons" as referenced in section 89.020.2, and, therefore, eight or fewer unrelated persons recovering from drug or alcohol abuse are allowed to live within a single-family residential district. Appellants argue that the trial court misapplied the rules of statutory construction by holding otherwise.

## SECTION 89.020

■ When the language in a statute is unambiguous and conveys a plain and definite meaning, the courts should not forage among the rules of statutory construction to look for or impose a meaning other than

that which is plainly stated. *Matter of Estate of Thomas*, 743 S.W.2d 74, 76 (Mo. banc 1988).

■ The language of section 89.020.2 is plain and unambiguous. Section 89.020, by its terms, addresses homes where unrelated physically or mentally handicapped persons reside, but not persons suffering from alcohol or drug abuse. In their plain meaning, these terms address different populations. If the legislature had wished to include individuals suffering from alcohol or drug abuse within the terms of section 89.020, it could have done so. The trial court did not misconstrue the statute and it was not necessary to look to the rules of statutory construction when the words used by the legislature were clear.

The trial court did not err by ruling that section 89.020 did not require that the City allow up to eight non-related individuals recovering from alcohol or drug abuse to live in a single residence in an R–1A single-family residential district.

## REHABILITATION ACT

■ Appellants argue further under their first point that the trial court's interpretation of section 89.020 as excluding individuals recovering from alcohol and drug abuse violates the Rehabilitation Act, specifically 29 U.S.C. § 794.

29 U.S.C. § 794 prohibits discrimination against otherwise qualified "handicapped" individuals under programs or activities receiving federal financial assistance. However, it is not sufficient, for purposes of bringing a discrimination claim on the basis of handicap under the Rehabilitation Act, simply to show that some aspect of the relevant overall entity receives some form of federal financial assistance. *Brown v. Sibley*, 650 F.2d 760, 769 (5th Cir.1981). It must be shown that the activity or program which is involved directly benefits from federal financial assistance. *Id.* In the

**2.** St. Joseph Code of Ordinances 26–010 defines "family" in relevant part, as "a group of unrelated persons of not more than five (5) (excluding servants) living together by joint agreement and occupying a single housekeeping unit with sin-gle kitchen facilities on non-profit, cost-sharing basis."

**3.** All statutory references are to RSMo Supp. 1992 unless otherwise specifically stated.

context of the case at bar, the plaintiffs would have to show that the City received federal financial assistance for its zoning program or that the City received direct federal financial assistance for the group home in question.

Appellants did not allege, and there is nothing in the record to establish, that the City receives federal financial assistance in regard to its zoning function or that the City receives federal financial assistance in regard to the group home in question. There is no dispute but that the City receives federal financial assistance for other programs and services, but the fact that the City receives federal financial assistance for some of its programs and services does not subject the entire operation of City government to the provisions of the Rehabilitation Act. *Doyle v. University of Alabama*, 680 F.2d 1323, 1326 (11th Cir. 1982) (citing *Brown v. Sibley*, 650 F.2d 760 (5th Cir.1981)).

The record does not establish that the Rehabilitation Act is applicable to the case at bar.

### FAIR HOUSING ACT

In their second and fourth point, appellants argue that the trial court erred by granting summary judgment on behalf of the City on the issue of whether the City's action constituted unlawful discrimination in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. Appellants argue specifically that the City's action violates 42 U.S.C. § 3604(f) and 42 U.S.C. § 3617. Appellants argue that there are material issues of fact that preclude summary judgment on their alleged violation of the Fair Housing Act.

42 U.S.C. § 3604(f) provides, in part, that it is unlawful:

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter;

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

(3) For purposes of this subsection, discrimination includes—

.     .     .     .     .

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3617 provides as follows:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

The circumstances presented in the case at bar are very much analogous to those presented in *Elliott v. City of Athens*, 960 F.2d 975 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992). The issue presented in *Elliott* was whether the City of Athens was required under the Fair Housing Act to accommodate a group home for recovering alcoholics in a single-family residential district that restricted more than four non-related persons living in a single dwelling. *Id.* at 976.

As noted by the court in *Elliott*, it has long been recognized that local governments have broad power in zoning. *Id.* at 981. (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114,

120, 71 L.Ed. 303 (1926)). Additionally, 42 U.S.C. § 3607(b)(1) provides that nothing in the Fair Housing Act "limits the applicability of any reasonable local, state, or federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." *Id.* at 978.

Even assuming, arguendo, that individuals recovering from alcohol and drug abuse are handicapped for purposes of the Fair Housing Act, as accepted in *Elliott*, there was no violation of the Act in the case at bar because the record does not reflect that anything was denied to those recovering from alcohol and drug abuse that is allowed to "non-handicapped" individuals under the City's zoning laws.

As determined by the trial court, the City's zoning laws allow no more than five unrelated persons to live in a single dwelling in an R–1A single-family residential district. This restriction applies equally to all residents of the City, with the only exception being for the mentally and physically handicapped as mandated under section 89.020.

Furthermore, a group home accommodating up to eight residents as proposed by appellants is allowed in other zoning districts within the City including R–IV residential and all other districts combining residential, business and commercial uses. The record does not show these accommodations to be unreasonable.

Nonetheless, appellants argue that the City initially took the position that a group home for drug and alcohol abusers was not allowed for any number of residents in an R–1A single-family residential district. Appellants argue that because of the City's initial position, the City's conduct exhibits that its real purpose and motive was to discriminate against alcohol and drug abusers.

Under Rule 74.04, a movant is entitled to summary judgment when the movant can establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. For purposes of Rule 74.04, a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993). A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous. Where the "genuine issue" raised by the non-movant is merely argumentative, imaginary, or frivolous, summary judgment is proper. *Id.*

Even assuming appellants' argument in regard to the City's initial position is true, it does not establish that the City sought to discriminate against alcohol and drug abusers. The City's own ordinances established the right of unrelated alcohol and drug abusers to live in an R–1A single-family residential district to the same extent as other unrelated individuals. Even if the City was mistaken in regard to the effect of its zoning ordinances, the ordinances themselves were not discriminatory.

Furthermore, the parties entered into a stipulation of facts which provided that the basis of the City's denial of the group home as proposed by Preferred Family was the City's interpretation of the City ordinances as well as state law. This stipulation belies appellants' argument of pretextual discrimination by the City.

Appellants' position as to a discriminatory intent by the City is merely argumentative and does not present a "genuine issue." The City was not exercising a discretionary function with an intention to discriminate. Rather, the City was enforcing its ordinances as applicable to all citizens. Appellants have not alleged that non-handicapped individuals were allowed to violate the City's ordinances while they were not. The record does not establish discrimination in housing by the City because of handicap.

Appellants' second and fourth points are denied.

## EQUAL PROTECTION/42 U.S.C. § 1983

In their third point, appellants argue that the trial court erred by granting summary judgment on behalf of the City on the issue of whether the City's action violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitu-

tion, 42 U.S.C. § 1983, and the Equal Protection Clause of the Missouri Constitution.

42 U.S.C. § 1983 prohibits the City from depriving any citizen or person within the jurisdiction of the United States of any rights, privileges, or immunities secured by the Constitution and laws. Likewise, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Equal Protection Clause of the Missouri Constitution prohibit Missouri from abridging the privileges or immunities of any person or denying any person equal protection of the law.

■ Zoning ordinances designating residential districts and defining a family unit deal with economic and social legislation, not with a fundamental interest or a suspect classification, so that the test of the constitutionality of such an ordinance is whether the ordinance is reasonable and not arbitrary and whether the ordinance bears a rational relation to a permissible state objective. *City of Ladue v. Horn*, 720 S.W.2d 745, 750 (Mo.App.1986) (citing *Village of Belle Terre v. Boraas*, 416 U.S. 1, 7–8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974)). Furthermore, city government has a legitimate concern in laying out guidelines for land use addressed to family needs. *Id.*

■ In the case at a bar, the City's exclusion of more than five unrelated individuals in an R–1A single-family residential district bears a rational relation to family needs in terms of how family neighborhoods are structured and the resulting quality of life afforded. The City's zoning in this regard is not arbitrary or capricious and, as addressed above in this opinion, the zoning in question is not discriminatory.

Appellants' arguments of denial of equal protection and violation of 42 U.S.C. § 1983 are denied.

The judgment of the trial court is affirmed.

All concur.