OXFORD HOUSE, INC., Jeff G., Eugene T., Ernest S., Gary B., Robert R., John R., Gary and Geri Erichson, Plaintiffs,

v.

TOWN OF BABYLON, Defendant.

No. CV 91–3591.

United States District Court,
E.D. New York.

April 28, 1993.

Stein & Schonfeld by Robert L. Schonfeld, Garden City, NY, for plaintiffs.

Mental Health Law Project by Beth Pepper, Washington, DC, co-counsel for plaintiffs.

Martin, Fallon & Mulle by Richard C. Mulle, Huntington, NY, for defendant.

James P. Turner, Acting Asst. Atty. Gen. by Myron S. Lehtman, Dept. of Justice, Washington, DC, for U.S. as amicus curiae.

## AMENDED ORDER

WEXLER, District Judge.

Pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), Oxford House, Inc. ("Oxford House") and Gary and

Geri Erichson ("the Erichsons"), plaintiffs in the above referenced action, seek to enjoin the Town of Babylon ("Town" or "defendant") from evicting persons with handicaps (also referred to as "plaintiffs") from their residence at 73 East Walnut Avenue, East Farmingdale, New York.[1] Now before the Court is plaintiffs' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that the Town violated the Fair Housing Act because its proposed eviction of plaintiffs has a disparate impact on persons with handicaps; or, in the alternative, because the Town failed to make reasonable accommodations in its zoning ordinances as may have been necessary to afford plaintiffs an equal opportunity to enjoy housing in the Town. For the reasons discussed below, plaintiffs' motion for partial summary judgment is granted.

## I. BACKGROUND

Oxford House was founded in 1975 by a group of men who were recovering from drug and/or alcohol addiction. Today there are 375 individual "Oxford Houses" which are operated on the same premise as the original. Three basic rules guide the functioning of all Oxford Houses: (1) they must be democratically self-governed; (2) they must be financially self-supporting; and (3) any person using drugs or alcohol must be immediately expelled. There are no health care professionals on the premises, and an individual can stay as long as he wishes so long as he remains drug and alcohol free and pays his share of the expenses.

Expressly based on the Oxford House concept, the Anti–Drug Abuse Act of 1988, 42 U.S.C. § 300x *et seq.*, mandates that each state establish and implement a revolving fund to foster the creation of self-run, self-supported recovery houses throughout the country. In order to qualify for a loan, applicants must adhere to the three requirements set forth in the Oxford House rules as stated above.

Pursuant to the Anti–Drug Abuse Act, the State of New York entered into a contract with Oxford House to provide it with a loan fund for the creation of recovery homes in New York. On or about August 30, 1991, Oxford House used $4,000 from this fund for the establishment of a home at 73 East Walnut Avenue, East Farmingdale, New York ("East Farmingdale Oxford House"). The house is owned by the Erichsons, and is located in a residential district in the Town, which is zoned for single family dwellings only.[2]

Shortly after the lease was signed, neighbors complained to Town officials that recovering alcoholics were living in their community. On September 3, 1991, a Town meeting was held to discuss the new residents. This was followed by a letter from the Town Attorney to the representatives of Oxford House, alleging that the house in East Farmingdale was in violation of the Multiple Dwelling Code because the residents were not a family.[3] On or about September 6, 1991, Oxford House requested that the Town make a reasonable accommodation in the application of its zoning ordinance so that the residents could continue living there. The Town has never responded.

On or about September 17, 1991, the Town Board authorized the Town attorney to commence appropriate litigation, including injunctive relief and contempt proceedings, to evict the residents of the East Farmingdale Oxford House. That same day, plaintiffs filed this action to enjoin the Town from carrying out its resolution.

---

**1.** On the date that this suit was filed, co-plaintiffs Eugene T., Ernest S., Gary B., Robert R., and John R. were residents of the East Farmingdale house. Because they do not currently reside there, injunctive relief is not requested on their behalf.

**2.** Section 213–1 of the Town Code defines a "single family dwelling" as "a building designated for and occupied exclusively as a home or residence for not more than one family."

**3.** The Town of Babylon Multiple Dwelling Code § 153–13 states that a family is one or more persons related by blood, marriage, or adoption. It may also be a number of unrelated persons, *not exceeding four*, who are not related by blood, marriage or adoption. The East Farmingdale Oxford House accommodates from five to eight individuals.

On February 2, 1992, the Town filed suit in state court against plaintiffs seeking to evict the residents of the East Farmingdale Oxford House.[4] On or about May 12, 1992, the state court action was removed to this Court and consolidated with plaintiffs' action.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). All reasonable inferences and ambiguities are drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Thompson*, 896 F.2d at 720 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1961) (per curiam)).

### B. *Overview of the Fair Housing Act*

Under the FHA, it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap. 42 U.S.C. § 3604(f)(1). A person is handicapped if he or she has a mental or physical impairment. 42 U.S.C. § 3602(h). It is well established that individuals recovering from drug or alcohol addiction are handicapped under the FHA. *United States v. Southern Management Corp.*, 955 F.2d 914, 917–23

(4th Cir.1992); *Elliott v. City of Athens*, 960 F.2d 975, 977 n. 2 (11th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 376, 121 L.Ed.2d 287 (1972); *Oxford House, Inc. v. Township of Cherry Hill*, 799 F.Supp. 450, 458–60 (D.N.J.1992); *United States v. Borough of Audubon, NJ*, 797 F.Supp. 353, 358–59 (D.N.J.1991). A plaintiff can establish a violation under the FHA by proving the disparate impact of a practice or policy on a particular group,[5] *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 933 (2d Cir.), *aff'd*, 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988), or by showing that the defendant failed to make reasonable accommodations in rules, policies, or practices so as to afford people with disabilities an equal opportunity to live in a dwelling. 42 U.S.C. § 3604(f)(3)(B). Once an FHA violation is established, the plaintiff is entitled to injunctive relief. *Southern Management Corp.*, 955 F.2d at 923.

### C. *Plaintiff's Claim that the Town's Zoning Ordinance Has a Disparate Impact on People with Handicaps*

To establish a *prima facie* case under the disparate impact analysis, a plaintiff must prove that the challenged practice "actually or predictably" results in discrimination. *Huntington Branch, NAACP*, 844 F.2d at 933. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to prove that "its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve the interest with less discriminatory effect." *Id.* at 936 (citing *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148–49 (3d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978).

---

4. Although the Town asserted in Resolution No. 716 (Plaintiffs' exhibit B) that plaintiffs were not a "family" as defined by the *Multiple Dwelling Code*, in the action to evict, the Town alleges that plaintiffs are not a "family" or "functional and factual equivalent of a natural family" as defined by the Single Dwelling Code. Under § 213–1 of the Town's Single Family Dwelling Code, a "family" is defined as "a single person or collection of persons related by kinship, adoption, blood or marriage . . . ." The "functional and factual equivalent of a natural family" is defined in the

same section as "a single housekeeping unit bearing the generic character of a family unit as a relatively permanent household, not a framework for transients or transient living. . . ."

5. Under a disparate impact analysis, the plaintiff need not show that the decision complained of was made with discriminatory intent. *Doe v. City of Butler, Pa.*, 892 F.2d 315, 323 (3d Cir. 1989).

■ In the end, the court must balance the plaintiff's showing of discriminatory impact against the defendant's justifications for its conduct. *Huntington Branch, NAACP*, 844 F.2d at 936. When conducting this balance, two factors weigh heavily in the plaintiffs' favor: (1) evidence of discriminatory intent on the part of the defendant; and (2) evidence that the plaintiff is seeking only to require a municipal defendant to eliminate an obstacle to housing rather than suing to compel it to build. *Id.* (citing *Metropolitan Hous. Dev. Corp. v. Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978)).

Plaintiffs in the present case have set forth evidence to establish that the Town's proposed eviction actually or predictably results in discrimination. The Town asserts that the Oxford House facility is not permitted at 73 East Walnut Avenue because the residents are not a "family" or the "functional and factual equivalent of a natural family." Under § 213–1 of the Town Code, a "family" is a group of persons related by "kinship, adoption, blood or marriage." The "functional and factual equivalent of a natural family" is defined as a "single housekeeping unit" bearing the same characteristics as a biological family, including a stable non-transient existence. The Town maintains that because plaintiffs are transients, they do not function as a family unit, and can therefore be evicted pursuant to the Town Code.

■ Applying § 213–1 of the Town Code to evict plaintiffs would discriminate against them because of their handicap. Recovering alcoholics or drug addicts require a group living arrangement in a residential neighborhood for psychological and emotional support during the recovery process.[6] As a result, residents of an Oxford House are more likely than those without handicaps to live with unrelated individuals. Moreover, because residents of an Oxford House may leave at any time due to relapse or any other reason, they cannot predict the length of their stay. Therefore, a finding of a violation of the Town Code leading to the town's eviction of plaintiffs from a dwelling due to the size or transient nature of plaintiffs' group living arrangement actually or predictably results in discrimination.

■ Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to prove that its actions furthered a legitimate governmental interest and that there were no less discriminatory alternatives. *Huntington Branch, NAACP*, 844 F.2d at 936. Defendant in the present case asserts that the ordinance is designed to keep boarding houses, rooming houses, multiple family dwellings, and other similar arrangements out of residential neighborhoods. The Town contends that it enforces the ordinance against all violators; the enforcement of the ordinance furthers a legitimate governmental interest in maintaining the residential character of the areas zoned for single family dwellings; and any discriminatory effect it may have on plaintiffs is due to plaintiffs' transiency and failure to live as a family, not because of their handicap.

Although a town's interest in zoning requirements is substantial, *see Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), the Court finds that evicting plaintiffs from the East Farmingdale Oxford House is not in furtherance of that interest. Five Town officials testified that the Town has received no substantial complaints from plaintiffs' neighbors within the past year. Furthermore, the house is well maintained and does not in any way burden the Town or alter the residential character of the neighborhood. The presence of the East Farmingdale Oxford House in a single family, residential district does not undermine the purpose of the Town's zoning ordinance. Therefore, defendant cannot justify evicting

6. Paul Molloy, a founder of Oxford House, attested that recovering alcoholics such as Oxford House residents "have discovered that, only by living with other recovering individuals, do the chances of staying drug and alcohol free increase greatly.... The supportive environment of an Oxford House gives the recovering individual in times of stress the opportunity to talk to other recovering persons who understand the day to day problems associated with recovery." (Declaration of Paul Molloy, ¶ 24). This testimony is unrefuted by defendants.

plaintiffs as being in furtherance of its asserted governmental interest.[7]

■ Even if the Town's proposed enforcement of its zoning ordinance advances a legitimate governmental interest, the Court nevertheless finds that plaintiffs' showing of discriminatory effect far outweighs the Town's weak justifications. Although the plaintiff is not required to prove discriminatory intent in order to show discriminatory effect, in balancing disparate impact against a governmental interest, evidence of such intent weighs heavily in the plaintiff's favor. *Huntington Branch NAACP*, 844 F.2d at 936. Plaintiffs in the present case have set forth substantial evidence to indicate that the Town had the intent to evict them because they were recovering alcoholics.

On September 3, 1991, a public meeting was held to discuss the East Farmingdale Oxford House. So many neighbors came to the meeting that Supervisor Pitts suspended the normal rules. (Excerpts from Regular Town Board Meeting of September 3, 1991, p. 1 (hereafter "Town Board Meeting")). These neighbors were "hostile" to it, (Deposition of Supervisor Pitts, p. 12), expressing their fears regarding the safety of children and senior citizens.[8] (Town Board Meeting, pp. 1, 3–5). No one from the community or the Town Board spoke in favor of the East Farmingdale Oxford House. (Plaintiffs' Exhibit B, p. 30).

The citizens of East Farmingdale made it clear that they did not want recovering individuals living in their neighborhood. One individual stated, "I don't want [my son] subjected to irrational, unpredicted [sic] behavior from people." (Town Board Meeting, p. 5). Another demanded, "[w]hat [can you] do to help us remove this threat from our community[?]" (Town Board Meeting, p. 5). In response to their concerns, Supervisor Pitts made the following statements:

> Merely not wanting to have someone there doesn't necessarily mean that we can stop them, but what it does mean is that there are all kinds of laws about single room occupancy, occupancy limitations in the town, motel/hotel in the town.

(Town Board Meeting, p. 2).

> I don't want to sit up here and say we can keep them out, because we've had other instances with group homes in the town where we have been unable to keep group homes out of the town.

(Town Board Meeting, p. 6).

> If it is coming under the laws of the State of New York, we're going to have a real hard time because it's a fight we fought before, and it's a fight we've unfortunately lost before.

(Town Board Meeting, p. 7).

A Town of Babylon councilman also spoke at the Town meeting, stating,

> So I wish I could say absolutely, we'll keep them out. But we're not an army. I mean if they move in tomorrow, we can't go in there and yank them out of their beds either. I'd like to say that....

(Town Board Meeting, p. 8).

After the Town meeting, the Town attorney sent a letter to Oxford House asserting that plaintiffs did not comport with the definition of a "family" in the Multiple Dwelling Code. (Plaintiffs' Exhibit G). Next, the Town alleged that the East Farmingdale Oxford House violated the Town Code because it was a "boarding house or the house of transients." (Resolution No. 716, Plaintiffs' Exhibit A). The Town presently contends

---

**7.** Defendant relies on *Elliott v. City of Athens* for the proposition that in enacting the FHA, Congress intended "to advance the interests of the handicapped without interfering seriously with reasonable local zoning." *City of Athens*, 960 F.2d at 983. This Court finds *City of Athens* inapposite. In *City of Athens*, the Eleventh Circuit held that under 42 U.S.C. § 3607(b)(1) the city could impose reasonable restrictions on the maximum number of unrelated persons who may occupy a dwelling unit in an area zoned for single-family residences. Defendant has not and could not raise this claim because, unlike the ordinance at issue in *City of Athens*, the definition of a family in § 213–1 of the Town's Single Family Code does not contain any maximum limitations as to the number of related or unrelated persons who can occupy a single-family dwelling.

**8.** One speaker exclaimed that an elderly neighbor with a bad heart would die of fright if one of the Oxford House residents broke into his house. (Town Board Meeting, p. 3).

that plaintiffs are in violation of the Town Code because they are not a "family" or the "functional and factual equivalent of a natural family." The statements made at the Town Board meeting, in conjunction with the shifting bases for eviction asserted by the Town, indicates that the Town wants to evict plaintiffs because they are recovering alcoholics.

Furthermore, in *Huntington Branch, NAACP*, the court held that where the plaintiff was not suing to require the municipal defendant to build housing, but rather to remove an obstacle to housing, the defendant needs to establish a more substantial justification for its conduct. *Huntington Branch, NAACP*, 844 F.2d at 936. Plaintiffs in the present case merely seek to require the Town to permit them to continue to use housing which already exists. This is another factor which weighs heavily in plaintiffs' favor. Accordingly, because there is no genuine issue of material fact as to whether the Town's conduct .actually or predictably has a discriminatory effect on plaintiffs due to their handicap, and the showing of discriminatory effect far outweighs defendant's justifications for its predisposition, plaintiffs' motion for partial summary judgment is granted.

D. *Plaintiffs' Claim that the Town Failed to Make Reasonable Accommodations Necessary to Permit Handicapped Persons to Use and Enjoy a Dwelling*

■ Even if the Town's proposed eviction of plaintiffs does not have a disparate impact on handicapped persons, the Court nevertheless finds that defendant's conduct constituted discrimination as it is defined in 42 U.S.C. § 3604(f)(3)(B). Under the FHA, it is a discriminatory practice to refuse to make "a reasonable accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [a handi-

capped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Courts have unanimously applied the reasonable accommodations requirement to zoning ordinances and other land use regulations and practices. *See, e.g., Township of Cherry Hill*, 799 F.Supp. at 462–63; *Horizon House Developmental Services, Inc. v. Town of Upper Southampton*, 804 F.Supp. 683, 699–70 (E.D.Pa.1992); *Stewart B. McKinney Foundation, Inc. v. Town Plan & Zoning Comm'n of the Town of Fairfield*, 790 F.Supp. 1197, 1221 (D.Conn.1992); *United States v. Village of Marshall*, 787 F.Supp. 872, 878 (W.D.Wis. 1991); *Oxford House–Evergreen v. City of Plainfield*, 769 F.Supp. 1329, 1344–45 (D.N.J. 1991); *United States v. Commonwealth of Puerto Rico*, 764 F.Supp. 220, 224 (D.P.R. 1991).

In the present case, plaintiffs requested that the Town modify the definition of a "family" as it was applied to them.[9] Plaintiffs have demonstrated that as recovering alcoholics and drug addicts, they must live in a residential neighborhood because an Oxford House "seeks to provide a stable, affordable, and drug-free living situation so as to increase the likelihood that a person will stay sober." (Plaintiffs' statement ¶ 6). In *Township of Cherry Hill*, the court held that the location of the houses in a drug-free, single family neighborhood played a crucial role in an individual's recovery by "promoting self-esteem, helping to create an incentive not to relapse, and avoiding the temptations that the presence of drug trafficking can create." *Township of Cherry Hill*, 799 F.Supp. at 450. This Court finds that reasoning persuasive. Because an Oxford House cannot exist in a single family, residential district under the Town Code, a modification of the definition of a "family" in plaintiffs' situation is warranted so that they may have the same opportunity to rent a house as do persons without handicaps.[10]

---

**9.** On or about September 6, 1991, Steven Polin, representing Oxford House, wrote to the Town attorney requesting that the Town make an accommodation in its zoning ordinance so as to permit plaintiffs to continue living in the House. (Affirmation of Paul Molloy, ¶ 17). The Town did not respond to this letter.

**10.** Because the Town Code prohibits "rooming houses" or "boarding houses" in multifamily and

single family districts, plaintiffs are not permitted to rent a house in any residential neighborhood in the Town. In any event, even if this were not the case, defendant would nevertheless be required to make an accommodation in its Code permitting plaintiffs to occupy *this* house. Title 42 U.S.C. § 3604(f)(3)(B) dictates that a handicapped individual must be allowed to enjoy a . *particular* dwelling, not just some dwelling some-

 Plaintiffs have also established that the requested accommodation was reasonable. An accommodation is reasonable under the FHA if it does not cause any undue hardship or fiscal or administrative burdens on the municipality, or does not undermine the basic purpose that the zoning ordinance seeks to achieve. *Township of Cherry Hill,* 799 F.Supp. at 463–66; *Village of Marshall,* 787 F.Supp. at 878; *City of Plainfield,* 769 F.Supp. at 1344–45. Because one of the purposes of the reasonable accommodations provision is to address individual needs and respond to individual circumstances, courts have held that municipalities must change, waive, or make exceptions in their zoning rules to afford people with disabilities the same access to housing as those who are without disabilities. *Horizon House,* 804 F.Supp. at 699. *See also Township of Cherry Hill,* 799 F.Supp. at 461–63; *Village of Marshall,* 787 F.Supp. at 878; *Commonwealth of Puerto Rico,* 764 F.Supp. at 224.

As discussed above, the East Farmingdale Oxford House has no adverse effect on the residential character of the neighborhood that the Town Code seeks to preserve. Moreover, neither the operation of the house nor the residents themselves have caused any financial or administrative burdens on the Town. (Pitts Deposition, p. 37). Consequently, the Court finds that the requested accommodation was reasonable and defendant's failure to make such accommodation was discriminatory conduct.[11] Accordingly, even if the Court did not find that defendant's conduct had a disparate impact on plaintiffs, there is nevertheless no genuine issue of material fact with regard to defendant's violation of 42 U.S.C. § 3604(f)(3)(B), and plaintiffs' motion for partial summary judgment would be granted on this ground as well.

## III. CONCLUSION

Accordingly, for the foregoing reasons, plaintiffs' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and defendant is enjoined from taking any further steps to evict plaintiffs from the East Farmingdale Oxford House.

SO ORDERED.

---

where in the town. *City of Plainfield,* 769 F.Supp. at 1344.

11. The Town asserts that because its zoning regulations do not have a harsher effect on one group than on another, it is not discriminating against plaintiffs. *See Doe v. Butler,* 892 F.2d at 323. The Court finds that defendant's reliance on *Butler* is misplaced. In that case, the plaintiffs challenged a local zoning ordinance as discriminating against them on the basis of their

sex. The court held that because the ordinance had no greater impact on women than on men, there was no FHA violation. However, that case involved complaints of inequitable treatment by groups who were entitled to be treated equally. Plaintiffs in the present case do not claim that they are entitled to be treated the same as other groups, but correctly assert that as handicapped persons they are entitled to *preferential* treatment under § 3604(f)(3)(B). *City of Athens,* 960 F.2d at 987 (Kravitch, J., dissenting).