UNITED STATES of America, Plaintiff,

v.

CITY OF PHILADELPHIA
PENNSYLVANIA,
Defendant,

DAVID B., et al., Plaintiffs,

v.

CITY OF PHILADELPHIA,
PENNSYLVANIA,
Defendant.

Civ. Nos. 92–7108, 92–7110.

United States District Court,
E.D. Pennsylvania.

Nov. 19, 1993.

John R. Dunne, Asst. U.S. Atty. Gen., Dept. of Justice, Housing and Civil Enforcement Section, Paul F. Hancock, Chief, Housing and Civil Enforcement Section, Washington, DC, Catherine Votaw, Asst. U.S. Atty., Philadelphia, PA, Harvey L. Handley, III, Housing and Civil Enforcement Section, Civil Rights Div., Dept. of Justice, Washington, DC, for U.S.

Judith E. Harris, James B. Jordan, City of Philadelphia Law Dept., Debora M. Russo, Asst. City Sol., Michael F. Eichert, Deputy City Sol., Philadelphia, PA, for defendant.

David Rudovsky, Kairys & Rudovsky, David A. Kahne, Fine, Kaplan & Black, Stephen F. Gold, Philadelphia, PA, for David B., et al.

Stanley R. Krakower, Krakower & Mason, Philadelphia, PA, for Spring Garden Civic Ass'n, Inc., and Concerned Citizens of Francisville, Inc.

## OPINION

LOUIS H. POLLAK, District Judge.

These two cases arise under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* In No. 92–7108, the plaintiff is the United States and it alleges that the defendant City of Philadelphia's failure to grant a requested zoning permit for a proposed home for homeless persons constitutes "a refusal to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling...." 42 U.S.C. § 3604(f)(3)(B).[1] In No. 92–7110, the plaintiffs are a group of potential residents of the proposed home, and their allegations are identical with those in the suit brought by the United States. Pending before this court are cross-motions for summary judgment in both cases.[2]

Part I of this opinion outlines the background and procedural history of these cases. Part II addresses the legal issues posed by the summary judgment motions.

---

1. Section 3604 provides that it shall be unlawful:

   (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of ... handicap ...

   (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of ... handicap ...

   (3) For purposes of this subsection, discrimination includes ...

   (B) a refusal to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling....

2. The City has asked that this court treat the arguments it has made in support of its motion for summary judgment against the United States as arguments for summary judgment against the private plaintiffs as well. *See* City's Response to the United States of America's Motion for Summary Judgment, at 1 n. 1

## I.

### A. *Background*

Project H.O.M.E. is a Pennsylvania non-profit corporation, co-founded by Sister Mary Scullion, which provides a continuum of services to homeless men who are mentally ill and/or recovering substance abusers. The organization operates two emergency shelters, open to any chronically homeless person in Philadelphia. A separate facility on the upper floors of one of the two shelters offers a structured environment and serves as a way-station to stabilize its twenty residents to the point at which they are receptive to treatment. Such treatment is provided by Project H.O.M.E. at two drug- and alcohol-free transitional homes located in other neighborhoods. Those residing in the transitional homes are closely supervised, and have shared bedrooms and communal meals.

Sister Mary believes that many residents of the transitional homes would benefit from more privacy and independence than these homes afford. Her proposed solution is a "Single Room Occupancy" ("SRO") which would provide small individual rooms and community kitchen facilities. The goal of such a facility is to give the resident a sense of control over his or her environment. The SRO would have staff members on site 24 hours/day and other case-management services available on a daily basis. The use of drugs and alcohol would be forbidden, with the prohibition enforced by random drug testing. The residents of the proposed SRO would come from Project H.O.M.E. and Women of Hope[3] transitional homes and from similar facilities. To be eligible to move to the SRO, a resident would have to have been actively participating in a recovery program for at least a year. A number of residents currently in transitional homes are capable of living in a less restrictive environment at this time and would benefit from a move to the proposed SRO. Their exodus from transitional homes would free up beds for homeless persons whose needs are not being met.

Project H.O.M.E. has acquired two adjacent buildings at 1515 and 1523 Fairmount Avenue to use for its proposed SRO. 1523 Fairmount Avenue, the much smaller of the two buildings, is essentially a conventional row house on a conventional lot. 1515 Fairmount, however, is four stories high and occupies the entire depth of the block. The parcel includes a side yard with an area of about 5,400 feet, which also extends the entire depth of the block.

According to the declaration of Mark E. Levin, managing attorney for the agency that is providing legal representation to Project H.O.M.E., Project H.O.M.E. has assembled a combination of financing from public and private sources to pay for the purchase and rehabilitation of 1515–1523 Fairmount Avenue. The financing includes "a $500,000 self-amortizing loan from the City of Philadelphia; a $206,619 first mortgage loan from the Pennsylvania Housing Finance Authority ("PHFA"); [and] $813,318 in deferred payment second mortgage loans from PHFA under its HOMES program." *See* Exh. F to the United States' Motion for Summary Judgment. In addition, Mr. Levin declares that the loan portion of the financing is made affordable primarily by rent subsidies committed by the United States Department of Housing and Urban Development ("HUD") under its Section 8 Moderate Rehabilitation Program and its Shelter Plus Care Program in the amounts of $2,160,000 and $276,480, respectively. *See id.* However, according to Mr. Levin,

It is the practice of PHFA, in common with other public and private institutions which provide financing for housing, to require counsel to the project sponsor ... to opine as to specific matters relating to such project. Specifically, PHFA requires counsel to opine that "there is no legal action pending or threatened, or proposed changes in zoning, which would prevent the construction from being commenced or completed in accordance with the plans and specifications and existing zoning laws and requirements." This opinion letter is a precondition to release of PHFA funds

---

**3.** Women of Hope, another organization for the homeless co-founded by Sister Mary, offers the same kinds of services to homeless women that are offered to homeless men by Project H.O.M.E.

and the availability of those funds is necessary to obtain the equity investment from investors.

*Id.* Mr. Levin explains that "because of the ongoing litigation in the courts of Pennsylvania, [he] is presently unable to issue an opinion letter which should be acceptable to PHFA." [4] *Id.* In a letter dated October 12, 1993, PHFA advised Sister Mary that "if th[e] proposal cannot evidence the necessary requirements for commitment presentation, including financial viability on or before November 30, 1993, the project will be removed from our processing pipeline and the HOMES set-aside will be utilized for other housing proposals." *See* Additional Submission of Fact of the United States and Private Plaintiffs. However, in a letter to Sister Mary dated November 4, 1993, PHFA indicated that "if th[is] court were to rule in favor of Project H.O.M.E.—Fairmount, the Agency will withdraw its November 30 deadline for submission of project documents." Supplemental Declaration of Mark Levin.

## B. *Procedural history*

Project H.O.M.E. applied for a zoning and use permit for 1515–1523 Fairmount Avenue on August 9, 1990. The Philadelphia Department of Licensing and Inspections ("L & I") granted the permit. Two civic associations that had publicly opposed the introduction into the neighborhood of a new residential facility for persons beset with handicaps— the Spring Garden Civic Association and the Francisville Neighborhood Advisory Committee—appealed the grant of the permit to the Zoning Board of Adjustment. At issue on appeal was the question of whether 1515 Fairmount is required, in order to be converted from commercial to residential use, to have a rear yard. Under the Zoning Code, a commercial building or a residential building housing fewer than three families must have

a rear yard "with a minimum depth of not less than 10% of the lot depth, but in no case less than eight feet." Zoning Code, § 14–303(4)(g)(.1). Buildings "housing three or more families shall have a rear yard with a minimum depth of nine feet and a minimum Rear Yard Area of 344 square feet, plus an additional 100 square feet of Rear Yard Area for each additional family more than three families." Zoning Code, § 14–303(4)(g)(.2). The building at 1515 Fairmount meets neither of these requirements. However, because it was built in 1932, before the Zoning Code took effect, it constitutes a permitted nonconforming structure under § 14–104(1). A nonconforming structure may be put to any use permitted in the district as long as the nonconforming structure is not extended in any way so as to increase the nonconformity.

The Zoning Board upheld the permit on July 5, 1991, reasoning that charitable organizations were exempt under the Zoning Code from the rear yard requirement. The civic associations appealed to the Court of Common Pleas, which reversed the Zoning Board's decision on December 19, 1991. The Court of Common Pleas found no charitable exemption in the Code. Project H.O.M.E. then appealed to the Commonwealth Court, which reversed the decision of the Court of Common Pleas and reinstated the permit on November 10, 1992. *See Spring Garden Civic Association et al. v. Zoning Board of the City of Philadelphia, et al.*, 151 Pa.Cmwlth. 413, 617 A.2d 61 (Commw.1992). In its opinion, the Commonwealth Court did not reach the exemption issue, but instead concluded that each resident of the home would not constitute a "family" under the Code and thus that Project H.O.M.E.'s proposed use of the facility would not increase the nonconformity of the structure from that which existed before the Zoning Code took effect. [5]

---

**4.** *See infra,* 226–227, for a brief description of "the ongoing litigation in the courts of Pennsylvania" to which Mr. Levin refers.

**5.** The civic associations had also argued that breaching the wall between 1515 and 1523 Fairmount would amount to an "extension of the non-conformity," because No. 1523 was previously a conforming structure. The Commonwealth Court rejected that contention, reasoning

that the exterior dimensions of the two structures would not be expanded. Nonetheless, in order to protect its right to use No. 1515 in case the Pennsylvania Supreme Court's opinion differed, Project H.O.M.E. applied to L & I in January, 1992 for a permit to use No. 1515 only. The permit was granted, and affirmed by the Zoning Board. The Court of Common Pleas issued a preliminary injunction on September 14, 1992, barring Project H.O.M.E. from acting on the

The civic associations filed a petition for an allowance of appeal ("allocatur") with the Pennsylvania Supreme Court on February 10, 1993; the Pennsylvania Supreme Court has not yet acted on that petition.[6]

Project H.O.M.E. did not raise the Fair Housing Act in any of the state administrative or judicial proceedings. An attorney representing potential residents did, however, write a letter on December 24, 1991 to the Acting Commissioner of L & I calling his attention to the "reasonable accommodation" requirement of the Act. The Acting Commissioner did not respond. On October 30, 1992, the attorney wrote a letter to the present L & I Commissioner requesting a reasonable accommodation; namely, that the City substitute side yard for rear yard. The Commissioner denied the requested accommodation on the ground that the request was not within his jurisdiction.

In related cases, the United States and potential residents have filed complaints with this court seeking: (1) a declaration that the City's conduct constitutes a violation of the Fair Housing Act, and that the accommodation requested by Project H.O.M.E. is reasonable and necessary to afford handicapped persons equal opportunity to use and enjoy a dwelling, within the meaning of 42 U.S.C. § 3604(f)(3)(B); and (2) an order requiring that the City issue a zoning and use permit for 1515–1523 Fairmount as a residence for 48 mentally ill persons, which recites that such use is a reasonable accommodation within the meaning of 42 U.S.C. § 3604(f)(3)(B). The parties have filed cross-motions for summary judgment. For the reasons given below, the motions for summary judgment of the United States and of the private plaintiffs are granted and the

City's motions for summary judgment are denied.

## II.

### A. *Capacity to sue*

■ As a preliminary matter, the City argues that, under 42 U.S.C. § 3614(a), the United States lacks the capacity to bring an enforcement action in this case because the Attorney General has not followed the path to the courthouse mapped out by the statute.[7] Section 3614(a) provides:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court.

The City cannot successfully contend that a court has authority to inquire into the reasonableness of the Attorney General's basis for "believ[ing] that ... [an asserted denial of] any of the rights granted in this subchapter ... raises an issue of general public importance." It is well settled that the reasonableness of the Attorney General's belief is not subject to judicial review. *See, e.g., United States v. Northside Realty Assoc.,* 474 F.2d 1164, 1168 (5th Cir.1973), *after remand,* 501 F.2d 181 (5th Cir.1974), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1483, 47 L.Ed.2d 747 (1976); *United States v. Housing Authority of the City of Chickasaw,* 504 F.Supp. 716, 726 (S.D.Ala.1980); *United States v. Hughes Memorial Home,* 396 F.Supp. 544,

---

permit. Briefs have been submitted by the parties but oral argument in the Court of Common Pleas has not yet been scheduled.

6. The Pennsylvania Supreme Court's backlog with respect to allocatur petitions is so substantial that it is hard to predict when it will act on the civic associations' petition. *See* Lisa Brennan, *Pa. Top Court Struggles With Backlog: Allocatur Situation High,* The Legal Intelligencer, November 12, 1993, at 1, 32.

7. Initially, the City took the position that neither plaintiff had standing and that, alternatively, this court should abstain pending resolution of the related state court proceedings. At oral argument on November 5, 1993, the City withdrew its abstention argument, its standing argument with respect to the private plaintiffs, and its standing argument with respect to the United States with the limited exception of the claim described in the text that the United States lacks capacity to sue under 42 U.S.C. § 3614(a).

552 n. 7 (W.D.Va.1975). But the City argues, nonetheless, that the United States may not bring suit based on the Attorney General's reasonable belief unless the Attorney General has *personally certified* to such a belief. The United States argues that under § 3614(a) it is sufficient that the Assistant Attorney General for Civil Rights—to whom the Attorney General has delegated authority to enforce the Fair Housing Act, *see* 28 C.F.R. §§ 0.13 and 0.50—signed the complaint and thus officially identified the issue as one believed to be of general public importance. In my view, the United States has the better reading of § 3614(a). The language of 42 U.S.C. § 3613(e), governing intervention by the Attorney General in Fair Housing Act cases initiated by a private plaintiff—"[u]pon timely application, the Attorney General may intervene in such civil action, if the Attorney General certifies that the case is of general public importance"— shows that Congress knows how to require the Attorney General to provide a certification when Congress believes that extra step to be important. Section 3614(a) contains no such language. Accordingly, I conclude that § 3614(a) does not require personal certification by the Attorney General and, hence, that the complaint filed by the United States in this case, having been signed by the Assistant Attorney General for Civil Rights, is a sufficient statement of the capacity of the United States to sue the City of Philadelphia.

### B. *The merits of the Fair Housing Act claim*

The United States and the private plaintiffs argue that the City has violated 42 U.S.C. § 3604(f)(B)(3). That section of the Fair Housing Act provides that unlawful discrimination includes failure to make "reasonable accommodations in rules, policies, practices or services ... necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Under this provision, cities "must change, waive, or make exceptions in their zoning rules to afford people with disabilities the same opportunity to housing as those who are without disabilities." *Horizon House v. Township of Upper Southampton,* 804 F.Supp. 683, 699–700 (E.D.Pa.1992).

■ The City of Philadelphia does not appear seriously to dispute that the requested substitution of side yard for rear yard is reasonable. The Supreme Court in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) held that an accommodation is not reasonable (1) if it would require a fundamental alteration in the nature of a program, or (2) if it would impose undue financial or administrative burdens on the defendant. *See id.* at 412–13, 99 S.Ct. at 2370. *See also Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1383 (3d Cir.1991). Substituting side yard for rear yard would impose no financial or administrative burden on the City of Philadelphia. Nor does it appear that granting the accommodation requested would require a fundamental alteration of the Zoning Code. The United States deposed Frank Antico, a 35–year employee of the Department of Licenses and Inspection, who has been instrumental in ongoing revisions of the Zoning Code and who is thoroughly familiar with the Code. *See* Deposition of Frank Antico, Exh. S to the United States' Motion for Summary Judgment. Mr. Antico testified that the Code prohibits buildings in a C–2 zone from occupying more than 75% of their lots in order to assure ventilation, Antico Dep. at 11–12, access for firefighters, *see id.* at 12, and room for recreation, *see id.* When asked why this open area must take the form of a rear yard, Mr. Antico said that this requirement is primarily intended to assure uniformity. *See id.* at 8–9, 19–21. When shown the site plan for 1515 Fairmount—which makes it clear that all sides of the building have free access to light and air, access to firefighters, and room for recreation—he acknowledged that all the purposes of the rear yard requirement are met. *See id.* at 21. Thus, the requested accommodation would require no fundamental alteration in the Zoning Code.

The City does argue that the requested accommodation is not "necessary" within the meaning of § 3604(f)(3)(B) because "the City has twice issued zoning and use permits to Project H.O.M.E. granting it the legal right to construct the proposed shelter." *See* City's Memorandum in Support of its Motion

for Summary Judgment, at 18. Thus, according to the City, "[t]here was no need for the City to grant as a reasonable accommodation, the substitution of side yard for the rear yard at 1515–1523 Fairmount Avenue...." *Id.* In response, the United States explains that the "premise of [the City's] argument is that one zoning permit is as good as another. But the fact is that the permit which Project H.O.M.E. currently holds has yet to do anyone any good, because its validity remains in doubt." United States' Memorandum in Opposition to the City's Motion for Summary Judgment, at 4.[8] As explained above, PHFA will not release funds to Project H.O.M.E. until Project H.O.M.E.'s attorney can opine that no litigation threatens the 1515–1523 Fairmount Avenue project. Because of the pending state court litigation, Project H.O.M.E.'s attorney cannot so opine. On October 12, 1993, PHFA said that it will withdraw its set-aside of $960,000 unless Project H.O.M.E. can "evidence the necessary requirements for commitment presentation" by November 30, 1993. Additional Submission of Fact of the United States and Private Plaintiffs. However, in a letter dated November 4, 1993, PHFA indicated that "if th[is] court were to rule in favor of Project H.O.M.E.—Fairmount, [it] will withdraw its November 30 deadline for submission of project documents." Supplemental Declaration of Mark Levin. Because Project H.O.M.E. will be unable to go forward with its plans to renovate and use 1515–1523 Fairmount without its requested accommodation, I conclude that such an accommodation is "necessary" within the meaning of § 3604(f)(3)(B).

Finally, the City argues that there is no Fair Housing Act violation because there is no "causal nexus" between the section of the Zoning Code provision at issue—the rear yard requirement—and the handicaps of the prospective residents of 1515–1523 Fairmount. *See* City's Response to the United States' Motion for Summary Judgment, at 5. The City contrasts the case at hand with a situation in which a zoning code barred the installation of elevators in three-story buildings, because a "disabled person who sought to install an elevator so that he could live in a three-story building would be able to show a direct causal link between the Zoning Code and a City action which bars him from residing in this dwelling *because of his handicap.*" *Id.* at 6 (emphasis in original). Although the City acknowledges that "discrimination" is defined in § 3604(f)(3)(B) as a refusal to make a reasonable accommodation, it argues that what is unlawful under the Act is discrimination "because of handicap." 42 U.S.C. § 3604(f)(1) & (2). *See id.*

▌ In my judgment, the City reads the statute too narrowly. Section 3604 provides that "it shall be unlawful—

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of ... handicap ...

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of ... handicap ...

(3) For purposes of this subsection, discrimination includes ...

(B) a refusal to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling....

Section 3604(f)(3) contains an independent definition of "discrimination"—a definition not modified by the phrase "because of ... handicap" found in §§ 3604(f)(1) & (2). Thus the language of § 3604(f) does not suggest that to establish a Fair Housing Act violation, a plaintiff must show a "causal nexus" between the challenged provision and the handicaps of the prospective residents.

Cases interpreting § 3604(f) provide support for the conclusion that no such causal nexus is required. The City's argument that

---

8. The United States made this argument in response to the position on standing that the City has since withdrawn. The United States then incorporated the argument by reference as a response to the City's position on the merits. *See* United States' Memorandum in Opposition to the City's Motion for Summary Judgment, at 9.

there must be a causal nexus between the zoning provision at issue and the handicaps of the prospective residents is analytically indistinguishable from an argument that plaintiffs must show that the zoning provision has a disparate impact upon handicapped persons. However, courts interpreting § 3604(f) have distinguished between the proof of disparate impact that is sufficient to establish liability under §§ 3604(f)(1) & (2) and the proof required to show that a defendant has failed to make a reasonable accommodation under § 3604(f)(B)(3). For example, in *Oxford House, Inc. v. Town of Babylon*, 819 F.Supp. 1179, 1182 (E.D.N.Y.1993), the district court considered a Fair Housing Act challenge to a provision in the Zoning Code of Babylon, New York, that restricted a particular property to a "family" or the "functional equivalent of a family." *See id.* at 1183. The Zoning Code defined "family" as a group of persons related by "kinship, adoption, blood or marriage" and defined the "functional equivalent of a family" as a "single housekeeping unit" bearing the same characteristics as a biological family, including a stable non-transient existence. *See id.* The court explained that "a plaintiff can establish a violation under the FHA by proving the disparate impact of a practice or policy on a particular group ... or by showing that the defendant failed to make reasonable accommodations in rules, policies or practices so as to afford people with disabilities an equal opportunity to live in a dwelling." *Id.* The court concluded that the plaintiff had shown both that the zoning provision had a disparate impact on persons with disabilities and that the town had failed to make a reasonable accommodation. *See id.* at 1185–86.[9] *See also Horizon House v. Township of Upper Southampton*, 804 F.Supp. 683, 695–700 (E.D.Pa.1992) (concluding that a township ordinance imposing a requirement that group homes be spaced 1,000 feet apart constitutes discriminatory treatment in violation of §§ 3604(f)(1) & (2), has a discriminatory effect in violation of §§ 3604(f)(1) & (2), and

constitutes a failure to make a reasonable accommodation in violation of § 3604(f)(3)(B)); *Oxford House–Evergreen v. City of Plainfield*, 769 F.Supp. 1329, 1343 (D.N.J.1991) (conducting a three-part analysis under the Act considering whether plaintiffs had shown discriminatory intent, disparate impact, or a failure to make reasonable accommodations). To read § 3604(f)(3) as requiring a showing of disparate impact—that is, a showing sufficient to establish liability under §§ 3604(f)(1) & (2)—would render § 3604(f)(3) superfluous.

### Conclusion

No material facts are in issue. On the undisputed factual record, plaintiffs have established a violation of § 3604(f) of the Fair Housing Act. Accordingly, plaintiffs' motions for summary judgment are granted and the City's motions for summary judgment are denied.

### ORDER

For the reasons given in the accompanying memorandum, it is hereby ORDERED and DIRECTED that the motions for summary judgment of the United States and of David B., *et al.*, are GRANTED and that the motions for summary judgment of the city of Philadelphia are DENIED. More specifically:

1. The accommodation requested by Project H.O.M.E. is reasonable and necessary to afford handicapped persons equal opportunity to use and enjoy a dwelling, within the meaning of 42 U.S.C. § 3604(f)(3)(B), and the City's refusal to grant the requested accommodation contravenes 42 U.S.C. § 3604(f); and

2. The City is hereby ORDERED and DIRECTED to issue to Project H.O.M.E. a zoning and use permit for 1515–1523 Fairmount Avenue which recites that such use is

---

9. Just as the district court in *Oxford House v. Town of Babylon* found the applicability of the term "family" in the Babylon Zoning Code to be central to its analysis, so too the Commonwealth Court in the state litigation antedating and now paralleling the case at bar found the applicability of the term "family" in the Philadelphia Zoning Code to be central to its analysis. The comparability of the two cases is, of course, limited by the fact that the Commonwealth Court was not called on to address claims arising under the Fair Housing Act.