**ADVOCACY AND RESOURCE CENTER and Mental Retardation Services, Inc., Plaintiffs,**

v.

**TOWN OF CHAZY, Defendant.**

**No. 95–CV–1396(LEK/RWS).**

United States District Court, N.D. New York.

Aug. 11, 1999.

Robert L. Schonfeld, of counsel, Stein & Schonfeld, Garden City, NY, for plaintiff.

James M. Brooks, Brooks & Meyer, Lake Placid, NY, for defendant.

## MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Plaintiffs, two not-for-profit corporations that own and use housing in Chazy, New York, commenced this action pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et. seq., Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et. seq., the Equal Protection clause of the United States Constitution, and the Due Process and Equal Protection Clauses of the New York State Constitution for an order enjoining defendant from enforcing its zoning code against plaintiffs. Presently before the Court is plaintiffs' motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons discussed below, both motions are denied.

## I. BACKGROUND

Advocacy Resource Center ("ARC") is a non-profit corporation that operates community residences for people with developmental disabilities in Clinton County, New York. In 1995, Mental Retardation Services, Inc. ("MRS"), a subsidiary holding company of ARC, purchased a single-family residence on 3 Sunny Patch Lane in the Town of Chazy. The residence borders Lake Champlain and is located within the Town's "Lake Area Residential District." Under the Town zoning code, the District is zoned for both single and two family dwellings, agricultural and forestry use, and seasonal camps.

Before the residence opened in July 1995, Richard Minogue, ARC's executive director, informed the Town of ARC's intention to use the residence. At a Town Planning Board meeting on July 10, 1995,

an informational meeting was held at which several residents expressed their opposition to ARC's use of the Sunny Patch property. Following that meeting, four of ARC's future neighbors in the District filed complaints with Bernard Nephew, the Town's Code Enforcement Officer, alleging that ARC's use of the property was in violation of the Town's zoning code. In a letter dated July 27, 1995, Nephew advised Minogue that the residence was a "non-profit recreational facility," which is expressly prohibited within the District. Nephew invited ARC to either apply for a variance or seek to amend the zoning code.

ARC has made no application for a variance, and since 1995 has operated the Sunny Patch residence as a vacation home for the disabled with supervisory staff members present. Although it remains unclear how many disabled individuals and supervising staff members are present, ARC does not contest that the number exceeds five, and the Town contends it approaches twenty-three following the restoration of another dwelling on the property. ARC maintains that its Sunny Patch residence should be regarded as either a permissible seasonal camp or a single-family dwelling. For purposes of zoning, however, the Town zoning code defines a "family" as "[o]ne or more persons related to each other by blood, marriage or adoption, or not more than 4 individuals who are not related, living together as a single housekeeping unit." ARC contends that the Town must modify its definition of family to permit a community residence for the disabled, who otherwise would be unable to enjoy a residence in the District.

ARC and MRS filed a complaint against the Town on September 29, 1995. Plaintiffs then moved for summary judgment seeking to enjoin defendant from enforcing its zoning ordinance against them. Defendant replied and cross-moved for summary judgment.

## II. PLAINTIFF'S SUMMARY JUDGMENT MOTION

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Thus, summary judgment is warranted where the non-moving party has no evidentiary support for an essential element on which it bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As explained below, plaintiffs' failure to establish the threshold fact that group-living is necessary at the Sunny Patch Lane residence precludes summary judgment.

### A. Exhaustion of Administrative Remedies/Ripeness

In both its reply to plaintiffs' motion and its own cross-motion, defendant contends that plaintiffs' claims should be dismissed since administrative remedies have not been exhausted and the claims are not yet ripe.

The FHA clearly states that an aggrieved party does not need to exhaust parallel administrative remedies provided through the United States Department of Housing and Urban Development (HUD) before commencing a Federal action. *See* 42 U.S.C. § 3613(B)(2). It would seem logical that if an aggrieved party does not need to exhaust HUD remedies before filing a federal action, he or she should not have to exhaust local remedies. Indeed, the Second Circuit held in *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 689 F.2d 391, 394 n. 3 (2d Cir.1982), that administrative remedies need not be exhausted before the commencement of a FHA action in federal court, even where the "reasonable accommodation" test is invoked. The court noted that the FHA's drafters intended administrative remedies to be a primary and not an exclusive method for seeking redress. *See id.*, at 394. Under the caselaw of this circuit, plaintiffs are therefore not required to exhaust all administrative and state remedies.

Defendant's arguments concerning ripeness are similarly unavailing. This case was ripe from the moment the Town issued its violation letter since it could have acted against the residence anytime thereafter. Moreover, in its statement of material facts, defendant expressly states its belief that the violation letter "is now final and binding on plaintiffs." Defendant's Statement of Material Facts dated August 4, 1997, ¶ 24; *see also* Affidavit of James M. Brooks dated August 4, 1997, ¶ 24.

### B. Fair Housing Act Claims

The FHA ensures equal opportunity in housing to handicapped persons by prohibiting discrimination against them "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Plaintiffs allege four violations of the FHA: (i) that defendant has failed to offer a reasonable accommodation that recognizes the needs of the Sunny Patch residents; (ii) that enforcement of the zoning restriction has an impermissible disparate impact on the disabled; (iii) that defendant's zoning code facially discriminates against the disabled; and (iv) that defendant intentionally discriminated against the plaintiffs on the basis of its membership's disability.

#### 1. Reasonable Accommodation

Under the FHA, discrimination includes the "refusal to make reasonable accommodation in rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

As Chief Judge McAvoy observed in *Oxford House, Inc. v. City of Albany,* 819 F.Supp. 1168 (N.D.N.Y.1993), the obligation to provide reasonable accommodation under the FHA arises where the accommodation is handicap-related. Con-

trary to plaintiffs' assertion, the mere fact of a zoning violation at the Sunny Patch Lane residence does not automatically require a reasonable accommodation. The accommodation sought must be related to the disability: the FHA does not grant protected classes carte blanche in determining where they can live in total disregard of local zoning codes.

For example, in *Oxford House, Inc. v. Town of Babylon,* 819 F.Supp. 1179 (E.D.N.Y.1993), the court found that the rehabilitation program in that case could not exist in a single-family, residential district under the Babylon town code, which employed a definition of "family" identical to Chazy's zoning code. The court observed that the location of rehabilitation houses in a drug-free, single-family neighborhood played a crucial role in an individual's recovery by promoting self-esteem, helping to create an incentive not to relapse, and avoiding the temptations that the presence of drug trafficking can create. The plaintiffs in that case had therefore established that their disability created a need for accommodation. *See id.* at 1185–86.

By contrast, plaintiffs here have failed to prove that the accommodation sought is handicap-related. Plaintiffs do assert that people with mental retardation and/or developmental disabilities are more likely to require supervision than non-disabled persons and often need to live with people like themselves for emotional support rather than their own families. *See* Plaintiffs' Statement of Material Facts dated July 18, 1997, ¶¶ 2–4. Indeed, defendant admits the veracity of those statements. *See* Defendant's Response to Plaintiffs' Statement of Undisputed Facts dated August 4, 1997, ¶ 1. Plaintiffs fail, however, to prove that this general assertion is true of the Sunny Patch Lane residence. Plaintiffs offer only conclusory allegations in Mr. Minogue's affidavit and deposition testimony without any substantiation in the form of financial records demonstrating that the residence would not be economically viable

without a larger residential community than permitted under the zoning code or evidence of the need for Sunny Patch residents to live in a community environment. Given the lack of proof that the handicaps of the Sunny Patch Lane residents require more than five people in the house, plaintiffs have failed to establish that a reasonable accommodation is required.

### 2. Other FHA Claims

■■■■ A violation of the FHA also may be premised on a theory of disparate impact. *See LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir.1995); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934–35 (2d Cir.), *aff'd in part*, 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988). Under disparate impact analysis, "a prima facie case is established by showing that the challenged practice of the defendant actually or predictably results in ... discrimination." *Huntington*, 844 F.2d at 934 (citation and internal quotations omitted). In order to establish disparate impact in this case, plaintiffs must show that the needs of the Sunny Patch Lane residents require a greater number in the residence than permitted under defendant's zoning code. There can be no discrimination unless plaintiffs' need to violate the ordinance is connected to the residents' disability. As noted above, that evidence has not been offered.

### C. ADA and Constitutional Claims

■■■ Similarly, absent proof that the Sunny Patch residents' disabilities require group-living in numbers violating defendant's ordinance, that ordinance cannot be found discriminatory and therefore violative of the ADA or constitutional protections asserted in plaintiffs' motion.

### III. DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

Defendant's cross-motion makes three principal assertions: (i) plaintiffs' claims are not yet ripe since all administrative remedies have not yet been exhausted; (ii) the definition of "family" contained in defendant's zoning code is constitutional under the state Due Process Clause and plaintiffs are in violation; and (iii) defendant's proposal that plaintiffs exhaust all available remedies constitutes reasonable accommodation. Defendant omits any discussion of plaintiffs' claims arising under the disparate impact and intentional discrimination FHA theories and the ADA.

### A. Exhaustion Defense

As discussed in detail above, this circuit does not require that all administrative remedies be exhausted in FHA cases, and plaintiffs' claims are properly before the Court. *See* discussion *infra* Part II. A.

### B. State Constitutional Defense

■■■ Defendant's cross motion only asserts the constitutionality of its zoning ordinance under the state Due Process Clause, ignoring plaintiffs' federal constitutional claim altogether. This Court would therefore have to exercise pendent jurisdiction over the state constitutional claim and resolve it independent of the federal claim. For reasons of judicial economy, that can only be done where the state claim can be decided without reference or dependence on federal constitutional law. *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753 (1909). That is not true here. If defendant's zoning ordinance was valid under the state constitution's Due Process Clause, it could still be invalid under the federal Equal Protection Clause. This Court therefore declines to exercise pendent jurisdiction and rule upon defendant's state Due Process claim.

### C. Reasonable Accommodation

In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For purposes of this motion, plaintiffs are therefore presumed to have established

that the disability of the Sunny Patch residents requires group-living in a number exceeding that permitted under defendant's zoning ordinance.

Defendant's recommendation that plaintiffs pursue their administrative and state remedies is neither reasonable nor an accommodation. Defendant's argument essentially recapitulates the exhaustion/ripeness argument that this Court addressed and rejected above. If municipal and local authorities' recommendation to pursue administrative remedies were upheld as a reasonable accommodation, such a ruling would utterly circumvent the law of this circuit expressly rejecting exhaustion principles in the context of the FHA. *See Huntington Branch*, 844 F.2d at 934–36.

## IV. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiffs' motion for summary judgment is DENIED; and it is further

ORDERED that Defendant's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.